She further complains that the court permitted Officers Free and Shelton to testify that appellant's reputation was bad. Free testified that he talked to some of the appellant's neighbors, who were also informers for the police department, and Shelton testified that he had talked to her neighbors, and particularly a Mr. Brooks. We find no error reflected by this testimony.

Finding no reversible error, the judgment of the trial court is affirmed.

**H. PETREY D/B/A H. Petrey & Sons et al.,**
**Appellants,**

v.

**Bettie Ray WILLIAMS et al., Appellees.**

**No. 6760.**

Court of Civil Appeals of Texas.

Amarillo.

March 17, 1958.

Rehearing Denied April 21, 1958.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellants.

Ross H. Scott, Dallas, for appellees.

CHAPMAN, Justice.

This case involves pleas of privilege appeals. In Cause No. 11,854, in the District Court of Gray County, Texas, Bettie Ray Williams, Mary Louise Williams, by and through her next friend, C. B. Amerson, A. N. Williams, and Mrs. A. N. Williams sued H. Petrey d/b/a H. Petrey & Sons and W. G. McKnight for the death of Vean Orsborn Williams. In Cause No. 11,886, in the same court and county Marsha K. Poindexter, Darla Ann Poindexter and Larry Gann Poindexter, by and through their guardian, Kathryn Ann Poindexter Rudd sued the same defendants for the death of Marshall G. Poindexter. Both deaths grew out of a collision between a milk truck in which the deceased Williams and the deceased Poindexter were riding and the trailer part of a loaded gravel truck driven by C. J. Rogers, an employee of H. Petrey & Sons, who was hauling gravel for highway construction on Highway 66 in Gray County, Texas, W. G. McKnight was the contractor engaged in construction work on Highway 66 and had as one employee, E. R. Carter, a flagman who was directing the traffic at the time and place of the collision. These two suits were consolidated below for the purpose of hearing the pleas of privilege urged separately by both defendants in both suits and the controverting pleas filed by the plaintiffs in both suits as against both defendants. A single order was entered in the consolidated suits overruling the pleas of privilege of both defendants in both suits. Both defendants have appealed and filed their separate briefs. Defendant Petrey, in his pleas of privilege, alleged his residence to be in Ft. Worth and asked that the suits against him be moved to Tarrant County, Texas. Defendant McKnight alleged his residence to be in Hunt County, Texas and asked that the suits against him be moved to that county.

Though the controverting affidavits of appellees do not allege specifically Subdivision 9a of Article 1995, Vernon's Ann. Civ.St., as the exception to exclusive venue in the county of one's residence as the exception they are relying on, it is obvious from their pleadings that is the statute they seek to invoke. The principal ground of negligence urged by appellees against Petrey was failure of Rogers to keep a proper lookout for vehicles traveling on Highway 66. Various grounds of negligence were urged against defendant McKnight, including the failure of his flagman Carter to keep a proper lookout for vehicles using Highway 66 in its approaches to the intersection in question. Both defendants, by brief, assert all appellees failed to establish the necessary proof to sustain their allegations that defendants were guilty of the negligent acts or omissions complained of and that such negligent acts were the proximate causes of the deaths.

On the question of establishing negligence and that such negligence of each defendant was a proximate cause of such deaths appellees offered the deposition of C. J. Rogers, the driver of the gravel truck owned by defendant Petrey. There were many objections to the questions and answers included in the deposition but much of the testimony of Rogers offered in the deposition is in the record without objection. It is principally to that testimony we now refer.

Highway 66, where the collision in question took place, runs in an east-west direction. About two miles east of Groom a dirt road running north and south intersects Highway 66 on the south side of same. On the occasion of the collision Rogers was hauling gravel about eight miles over the dirt road south of the Highway, then proceeding west on Highway 66 about 15 miles to the area

of said Highway which was then under construction. His testimony introduced from the deposition showed a railroad about 50 or 60 feet south of Highway 66 running parallel with said Highway. The railroad dump was about ten feet high where he crossed it in hauling over the dirt road. At the intersection of the dirt road with Highway 66, E. R. Carter was flagman for McKnight. On the occasion in question he was using a red flag about a foot square on a two-foot stick, was standing on the east side of the dirt road about half way between the south side of the pavement and the railroad track, and was facing Rogers as the latter was driving north from the railroad toward the pavement on Highway 66. As Rogers came up to the track he noticed Carter waving him to come on. He waved four or five times for Rogers to keep coming forward to the Highway. According to Rogers' deposition Carter never, on the occasion in question, made any outcry for him to stop and never waved the flag for him to stop or for anyone traveling on the highway to stop for the gravel truck proceeding north from the dirt road onto Highway 66. Rogers noticed the truck and a pickup to his left, west of him, proceeding east on Highway 66 as he started onto the highway. He was asked if the vehicles to the west were as much as a mile away and his answer was, "Possibly, maybe three-fourths, maybe a half * * *."

The distance from the bumper of his truck to the rear end of his trailer attachment was about 35 feet. The width of the pavement on Highway 66 where he came onto it was about 25 or 30 feet. About the time he had taken up the south half of the pavement with the tractor part of his truck, still proceeding north very slowly, he got a glimpse of a two-tone passenger car going west on the highway, which he had never seen until it was right in front of him. With respect to this car his deposition related:

"Q. But you had not observed or seen the car which passed in front of you until it got almost immediately north of your truck, is that right? A. Yes, sir, I didn't see him until he come direct in front of me where I could see him out of the windshield.

"Q. At that time he was still slightly somewhat to the east of you? A. I would say he was, not too far.

"Q. But he was close enough that you knew if you didn't apply your brakes you would have a collision with him, is that correct? A. That is right.

"Q. And you hadn't seen him coming when he was further on down the road? A. I hadn't seen him anywhere. I still don't know where he came from.

"Q. At that time, Mr. Rogers, judging from your own speed, had you not applied the *breaks,* did you have plenty of time to cross before the Borden truck would have gotten to the intersection? A. Yes, yes I really think so."

■ The testimony from the deposition shows that automobiles to the east down Highway 66 could be seen three-fourths of a mile away. The deposition also shows that the two-tone car was being driven between 40 and 50 miles an hour and had to take to the north shoulder of the highway in passing in front of the truck. We believe this testimony is amply sufficient to show that appellant Petrey's driver, Rogers, and McKnight's flagman, Carter were each negligent in failing to keep a proper lookout and that said failures were proximate causes of the collision and resulting deaths. Even if Rogers was looking to the flagman to properly guide him the flagman's presence did not relieve him of his duty to keep a proper lookout before driving onto the highway. Had he been keeping a proper lookout he certainly would have seen the two-tone car before it was right in front of his windshield. We also believe the testimony is sufficient to

show McKnight's flagman, Carter was guilty of negligence in directing the Petrey truck to proceed onto the highway when it did not have sufficient time to clear the roadway ahead of approaching traffic and that such negligence was a proximate cause of the resulting deaths. It is obvious he could not have been keeping a proper lookout for traffic on the highway when his face was turned to the south and away from it. Had only the vehicles from the west been approaching the intersection the appellants' contentions that appellee failed to prove negligence and that the respective acts of negligence were proximate causes of the deaths might have been well taken. In that event their arguments that the testimony showed the Borden truck alone caused the collision would have some weight, but they overlook the fact that the testimony shows failure on the part of both Carter and Rogers to keep a proper lookout to the east, and that had the appearance of the two-tone car traveling from east to west not caused the truck to stop after it was on the highway it would have cleared the highway for the Borden truck to pass.

■ Appellants' objections in several instances to leading questions would without a doubt, have been good had the hearing been before a jury. It might even be said some of them were good in a hearing before a court, but it requires no citation of authority for us to say that since there is sufficient evidence of probative value not objected to, those questions which were leading did not constitute grounds for reversal.

■ Much space in appellant, Petrey's brief, is devoted to the negligence of the parties in the Borden truck. If the testimony is the same on a trial on the merits there will be no doubt of the negligence of the driver of the Borden truck, but such being a defensive matter it is immaterial in the instant case. Janes Gravel Co., Inc. v. Stewart, Tex.Civ.App., 265 S.W.2d 874. Particularly do we say it is immaterial under the fact of this case. Both appellants

assign as error the action of the trial court in denying their respective pleas of privilege in the Poindexter case because the testimony fails to identify any plaintiff named in the Poindexter cases. We have checked the testimony carefully and find not one shred of evidence that establishes the named plaintiffs as the beneficiaries of the deceased Poindexter. It is true the petition was referred to, adopted, and made a part of the controverting affidavit, but the affidavit was not introduced in evidence.

■ The venue facts which a plaintiff, desiring to sue a defendant outside the county of defendant's domicile, must allege and prove, if the defendant asserts his privilege, are those which are stated in the particular exception of Article 1995 that is applicable or appropriate to the character of suit alleged in plaintiffs' petition. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91.

■■ Appellees, in the Poindexter case, having pleaded such facts as to bring them within Exception 9a of Article 1995 they had the burden of proving that which is set out in said section as being necessary in order to retain venue in a county other than the county of defendants' residences. The third requirement of said Section 9a is that plaintiff must prove that the negligent act or omission relied on was a proximate cause of *plaintiffs' injuries*. The proof is completely void of any testimony showing the named plaintiffs as beneficiaries of the deceased, Poindexter. If they are not his beneficiaries the plaintiffs suffered no legal injuries. In order to show they suffered legal injuries they would have to prove their relationship to him. By brief, appellees in the Poindexter case assert the relationship of statutory beneficiaries is a matter of proof to be presented upon the trial of the case on its merits. This, of course, is true, but such statement overlooks the fact that one of the necessary elements that must be proven under the 9a Exception is that the negligent act or omission was a proximate cause of *plaintiffs' injuries* just the same as the element that an act or omis-

388

sion of negligence occurred in the county where suit is filed. The assignment just discussed is therefore sustained. All other assignments are overruled. (Emphasis supplied.)

Appellees, having failed to prove one of the necessary elements of the venue exception relied on in Cause No. 11,886, the judgment of the trial court in that case is reversed and rendered. Said cause alleged against defendant, Petrey, is ordered transferred to Tarrant County, Texas, and the cause alleged against defendant McKnight is ordered transferred to Hunt County, Texas.

In other respects the judgment of the trial court which retains venue in Gray County in Cause No. 11,854, is affirmed.